UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

JAYNE RENGIFO,

       Plaintiff,

v.                        CASE NO. 8:09-CV-1725-T-17MAP

HARTFORD LIFE AND
ACCIDENT INSURANCE
COMPANY,

       Defendant.

_____/

ORDER

This cause is before the Court on:

Dkt. 13    Motion for Partial Summary Judgment
Dkt. 14    Notice
Dkt. 15    Response
Dkt. 18    Reply
Dkt. 21    Supplemental Response
Dkt. 24    Reply
Dkt. 27    Response

The Complaint includes Plaintiff's claim for breach of contract based on Defendant's non-payment of the proceeds of a life insurance policy to Plaintiff Jayne Rengifo, and a claim for breach of fiduciary duty.  The Complaint was filed in Pinellas County Circuit Court and was removed to the U.S. District Court for the Middle District of Florida.

Defendant now moves for entry of partial summary judgment. Defendant Hartford Life and Accident Insurance Company ("Hartford") seeks a determination that this action is governed by the Employee Retirement Income Security Act of 1974 ("ERISA"), and requests the dismissal of Count II of the Complaint.

Case No. 8:09-CV-1725-T-17MAP

Defendant further seeks a determination that Plaintiff has no entitlement to a jury trial or punitive damages.

Plaintiff Jayne Rengifo has incorporated the following documents by reference into Plaintiff's Supplemental Response (Dkt. 21) in opposition to Defendant's Motion for Partial Summary Judgment:  Dkt. 2, Complaint with attached exhibit, Dkt. 11, Plaintiff's Response with attached exhibits, and Dkt. 15, Plaintiff's Response to Motion for Partial Summary Judgment.

I.  Standard of Review

Summary judgment should be rendered if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(c).

> The plain language of Rule 56(c) mandates the entry of summary judgment after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial."

Celotex Corp. v. Catrett, 477 U.S. 317 (1986).

The appropriate substantive law will guide the determination of which facts are material and which facts are...irrelevant. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).  All reasonable doubts about the facts and all justifiable inferences are resolved in favor of the non-movant.  See Fitzpatrick v. City

Case No. 8:09-CV-1725-T-17MAP

of Atlanta, 2 F.3d 1112, 1115 (11ᵗʰ Cir. 1993).  A dispute is
genuine "if the evidence is such that a reasonable jury could
return a verdict for the non-moving party."  See Anderson, 477
U.S. at 248.  But, "[i]f the evidence is merely colorable...or is
not significantly probative...summary judgment may be granted."
Id. at 249-50.


II. Statement of Facts

     1.  Plaintiff Jayne Rengifo has been employed by Delta Air
Lines, Inc. since August 22, 1994. (Rengifo Affidavit, Dkt. 21-6,
par. 2).

     2.  Plaintiff Jayne Rengifo asserts that Plaintiff married (
Donaldo Rengifo on January 15, 1991 in Brookline, Massachusetts.
(Rengifo Affidavit, Dkt. 21-6, par. 3).

     3.  Plaintiff Jayne Rengifo asserts that Delta Air Lines,
Inc. issued a policy of insurance on the life of Donaldo Rengifo,
Jr. (Complaint, Dkt. 2, par. 4).

     4.  Plaintiff Jayne Rengifo asserts that Donaldo Rengifo,
Jr. died on December 17, 2006 in Colombia, South America.
(Complaint, Dkt. 2, par. 5; Dkt. 21-6, par. 5).

     4.  Plaintiff asserts that the subject insurance policy
names Plaintiff Jayne Rengifo as the beneficiary.  (Complaint,
Dkt. 2, par. 6).

     5.  Plaintiff Jayne Rengifo asserts that Plaintiff Rengifo
has performed all conditions precedent to payment under the

3

Case No. 8:09-CV-1725-T-17MAP

policy, or those conditions have occurred.  (Complaint, Dkt. 2, par. 7).

6.  Delta Air Lines, Inc. applied to Continental Casualty Company for a policy of insurance providing coverage for "24 Hour All Accident Protection" for Delta's employees on April 22, 1994. (Master Group Application, Dkts. 24-4, 24-5).

6.  Defendant Hartford asserts that Defendant issued Policy No. SR-83015541 to Delta effective January 1, 2003. (Dkt. 14-1, p. 3)

7.  Policy No. SR-83015541 was issued by Continental Casualty Company ("CNA")(Dkt. 24-2, p. 5).  Defendant Hartford acquired the Group Benefits division of CNA on January 1, 2004. (Spring Deposition, Dkt. 21-8, p. 3).  After the acquisition, the subject policy was reissued to Delta by Defendant Hartford. (Certificate of Insurance for 2006, Dkt. 24-3, Dkt. 21-7, p. 4)).

8.  The subject Policy provides insurance coverage to "Active Employees, Retired Employees, and Disabled Employees...together with their Dependents, if any" (Dkt. 14-1, p. 3)

9.  The subject Policy provides that the Policy "is issued in consideration of the application of Delta...and the payment, by the Insured Employees, of the premium."  (Dkt. 14-1, p. 3).

10.  The Policy provides that "This Policy (including the endorsements and the attached papers) and the application of Delta constitutes the entire contract between the parties."

4

Case No. 8:09-CV-1725-T-17MAP

(Dkt. 14-1, p. 14).

    11.   The Policy described eligibility for coverage:

> Each person who is an Employee, as described in Item 5 of the Application for this Policy, is eligible to become an Insured Employee hereunder.
>
> New Employees who enroll during their designated enrollment period shall become insured as of the first day of the pay period following their enrollment deadline.
>
> In order to become insured or to change coverage...the Employee must be actively working on the date the request is received by Delta as evidenced by Delta's records.

(Dkt. 14-1, p. 10).

    12.   Item 5 of the Application provides:

> **5.  CLASSIFICATION OF EMPLOYEES:**
>
> **Classification:**    All permanent employees and temporary employees (with 30 days service) and their eligible dependents, (including disabled and retired employees and eligible dependents) of Delta Air Lines, Inc., who are on the U.S. domestic payroll plus those employees in Canada, United Kingdom, Puerto Rico, Bermuda and the Bahamas, are eligible for coverage hereunder.

(Dkt. 24-4, p. 1).

5

Case No. 8:09-CV-1725-T-17MAP

13. The Policy provides that the Policy "continues in force for a period of sixty months from January 1, 2003 and may thereafter be renewed, for like periods, until terminated in accordance with the Termination Provision...of this Policy." (Dkt. 14-1, p. 3).

14. The Policy's Termination Provision provides:

> The Company or Delta may terminate this Policy as of the last day of any sixty (60) month Policy Term by mailing written notice to the other party, not less than one hundred eighty (180) days prior to such termination date."

(Dkt. 14-1, p. 15).

15. The Policy provides that its terms could be changed "by amendment to this Policy signed by Delta and an Executive Officer of the Company." (Dkt. 14-1, p. 15).

16. The Policy specifies the benefits available under the Policy (including the death benefit sought by Plaintiff) and provides specific procedures for making claims for benefits and for the payment of claims. (Dkt. 14-1, pp. 14-15).

17. The Policy provides that:

> Delta shall maintain the enrollment records with respect to each Insured Employee. Delta shall furnish periodically such information relating to new persons, adjustments because of changes, and terminations of, insurance as may be required by the Company to administer

6

Case No. 8:09-CV-1725-T-17MAP

>           this insurance.  The Company shall provide
>           the necessary employees to administer the
>           program on the premises of Delta.

(Dkt. 14-1, p. 16).

18.   The Policy provides that "The Company will issue to Delta for delivery to each Insured Employee an individual certificate setting forth a statement as to the insurance protection to which the Insured Employee is entitled and to whom indemnities provided by this Policy are payable."  (Dkt. 14-1, p. 15).

19.   Defendant Hartford's policy was to issue a plan booklet explaining the provisions of the insurance policy, and containing an insurance certificate, to Delta to provide to each enrolled employee on an annual basis. (Taylor Affidavit, Dkt. 24-1, p. 2). Delta puts the plan booklet on its internal website to provide it to Delta's employees.   (Dkt. 24-1, p. 2).

III.  Discussion

A.  Applicable Insurance Policy

Defendant Hartford asserts that Group Policy No. SR-83015541 is the applicable policy. (Dkt. 14-1, Taylor Affidavit, with attached policy).  Policy No. SR-83015541, issued by Continental Casualty Company, states that the policy was issued pursuant to Delta's application, and was to continue in force for sixty months from its issue date of January 1, 2003.  (Dkt. 14-1, p. 3).

Case No. 8:09-CV-1725-T-17MAP

Plaintiff Rengifo argues that the January 1, 2003 policy is not the applicable policy.  Plaintiff Rengifo argues that the 2006 Hartford policy attached to the Complaint (Dkt. 2) is the applicable policy.  (Dkt. 21, p. 1).

The documents attached to the Complaint comprise a Certificate of Insurance issued pursuant to Policy No. SR-83015541, issued to Delta Air Lines, Inc. (Dkt. 2, pp. 4-18). The Certificate of Insurance expressly refers to the Policy on its face.

Defendant Hartford does not dispute that Defendant Hartford purchased the accidental policy lines of business from Continental Casualty in 2004, and later converted all policies over to Hartford policies.  Defendant Hartford further does not dispute that an annual certificate of insurance was issued to Delta employees.  These facts do not transform an annual Certificate of Insurance issued to a Delta employee into the insurance policy issued to Delta Air Lines, Inc.

The Court notes that Policy No. SR-83015541 provides:

> **ENTIRE CONTRACT: CHANGES:** This Policy (including the endorsements and attached papers) and the application of Delta, constitute the entire contract between the parties and any statement made by Delta shall be deemed a representation and not a warranty.
>
> No such statement shall void the insurance or reduce the benefits under this Policy or be used in defense to a claim hereunder unless it is contained in a written application signed by the applicant, nor shall such

8

Case No. 8:09-CV-1725-T-17MAP

> statement of Delta be used at all to void
> this Policy after it has been in force for
> two (2) years from the date of the insurance
> coverage with respect to which claim is made.
>
> No change in this Policy shall be valid
> unless approved by an Executive Officer of
> the Company and evidenced by endorsement of
> this Policy, or by amendment to this Policy
> signed by Delta and an Executive Officer of
> the Company.  No agent has authority to
> change this Policy or to waive any of its
> provisions.

(Dkt. 14-1, p.  14).

The Court concludes that the policy attached to the Taylor
Affidavit is the applicable policy (Dkt. 14-1), and that the
annual Certificate of Insurance issued to Delta employees is not
the applicable insurance policy.

B.   ERISA

In order to correctly analyze the issues in this case, at
the outset the Court must determine whether the subject claim is
an ERISA claim or a breach of contract claim.

ERISA regulates "employee welfare benefit plans."  Anderson
v. UnumProvident Corp., 369 F.3d 1257, 1263 (11th Cir. 2004).  An
employee welfare benefit plan is any "plan, fund, or program"
that is "established or maintained by an employer" for the
purpose of "providing benefits to participants or their
beneficiaries."

9

Case No. 8:09-CV-1725-T-17MAP

ERISA preempts "any and all State laws insofar as they...relate to any employee benefit plan." Hall v. Blue Cross/Blue Shield of Ala., 134 F.3d 1063, 1065 (11th Cir. 1998). A state law cause of action "relates to" an ERISA plan, and is preempted, if it "has a connection with or reference to such a plan." Variety Children's Hosp., Inc. v. Century Med. Health Plan, Inc., 57 F.3d 1040, 1042 (11th Cir. 1995).

ERISA completely preempts state law claims when: 1) there is a relevant ERISA plan; 2) the plaintiff has standing to sue under the plan; 3) the defendant is an ERISA entity; and 4) the complaint seeks compensatory relief akin to that available under Sec. 1132(a). See Butero v. Royal Maccabees Life Ins. Co., 174 F.3d 1207, 1212 (11th Cir. 1999).

The existence of an ERISA plan is a question of fact, to be answered in light of all the surrounding facts and circumstances from the point of view of a reasonable person. Kanne v. Connecticut General Life Insurance Company, 867 F.2d 489 (9th Cir. 1988). The critical issue is whether the employer took steps to "establish or maintain a plan to provide benefits to its employees as part of the employment relationship." Moorman v. UnumProvident Corp., 464 F.3d 1260, 1264 (11th Cir. 2006).

A program which is within ERISA's "safe harbor" provision is exempt from the provisions of ERISA. Moorman v. UnumProvident Corp., 464 F.3d 1260, 1265 (11th Cir. 2006). Certain "group or group-type insurance programs" are not ERISA plans. See 28 C.F.R. Sec. 2510.3-1(j). Four elements establish a "safe harbor"--a non-ERISA plan:

Case No. 8:09-CV-1725-T-17MAP

> 1.   No contributions are made by an employer
> or employee organization;
> 2.   Participation in the program is
> completely voluntary for employees...;
> 3.   The sole functions of the employer...with
> respect to the program are, without endorsing
> the program, to permit the insurer to
> publicize the program to employees or
> members, to collect premiums through payroll
> deduction or dues checkoffs and to remit them
> to the insurer; and
> 4.   The employer...receives no consideration
> in the form of cash or otherwise in
> connection with the program.

In considering the safe harbor exemption, the Court must strictly
apply the above requirements.  As to endorsement, if an employer
performs any functions in addition to the functions cited above,
publication and the collection and remission of premiums, the
policy is disqualified from ERISA's safe harbor.

Defendant Hartford argues that Delta Air Lines, Inc.
established a welfare benefit plan, and the subject insurance
policy was issued pursuant to Delta's welfare benefit plan.
Defendant Hartford further argues that the subject insurance
policy is not within ERISA's safe harbor.

"While an employer's failure to adhere to the safe harbor
provision does not necessitate a finding that it 'established or
maintained' an ERISA plan, its adherence to the provision does
preclude such a finding."  Anderson v. UnumProvident Corp., 322
F.Supp.2d 1272, 1275 (M.D. Ala. 2002), aff'd 369 F.3d 1257 (11th
Cir. 2004).  Therefore, the Court first addresses whether the
subject insurance policy is within ERISA's safe harbor, and then
whether Delta established or maintained an ERISA plan.

11

Case No. 8:09-CV-1725-T-17MAP

1.  Safe Harbor

    In order to find that the insurance policy is within ERISA's
safe harbor, all four of the above requirements must be met.  If
Delta Air Lines, Inc. did more than permit the insurer to
publicize the program to Delta's employees, and did more than
collect and remit the premiums, then the subject insurance policy
is not within ERISA's safe harbor.

    The undisputed evidence establishes that Delta's employees
paid the entire premium for the subject insurance policy through
payroll deduction; Delta did not contribute to the cost of the
insurance coverage.  The undisputed evidence also establishes
that participation in program is voluntary for Delta employees,
and that Delta receives no compensation in connection with the
insurance program.  The issue of whether Delta endorsed the
insurance program is disputed.

    Defendant Hartford argues that Delta, through various
actions and provisions of the policy, endorsed the plan.
Plaintiff Rengifo argues that Defendant merely allowed
publication of the plan, and collected and remitted premiums.
Plaintiff Rengifo has offered a letter from Delta in which Delta
asserts that prior to January 1, 2008, Delta did not provide
group accident coverage under an ERISA benefit plan.  The letter
further states that "effective January 1, 2008, Delta adopted the
Delta Air Lines, Inc. Optional Insurances Plan, under which
insurance coverage was included."  (Dkt. 21-1).

    The issue of whether an employer has endorsed a policy of
insurance is a mixed question of fact and law.  "An employee

12

Case No. 8:09-CV-1725-T-17MAP

organization will be considered to have endorsed a group or
group-type insurance program if the employee organization
expresses to its members any positive, normative judgment
regarding the program...An endorsement within the meaning of [§]
2510.3-1(j) occurs if the employee organization urges or
encourages member participation in the program or engages in
activities that would lead a member reasonably to conclude that
the program is part of a benefit arrangement established or
maintained by the employee organization.  ERISA Op. Letter No.
94-26A, 1994 WL 369282 (July 11, 1994)."  See Moorman v.
UnumProvident Corp., 464 F.3d 1260, 1267 (11th Cir. 2006).

     The Court notes that the Complaint contains admissions which
establish that the subject insurance policy was provided through
Delta Air Lines, Inc. (Dkt. 2, p. 1, par. 4), and the policy
states that Delta applied for the policy (Dkt. 24).  Defendant
Hartford has provided a copy of Delta's Master Group Application
(Dkts. 24-5, 24-6, 24-7).  Delta is the policy-holder.  The
application establishes that Delta applied for the
insurance to the carrier selected.  Plaintiff has offered no
evidence which establishes a factual dispute as to this issue.
No evidence has been provided that Delta's employees asked Delta
to procure insurance coverage for accidents, and that Delta's
application for coverage was designed to accommodate the
employees' request for insurance coverage from Continental
Casualty Company.  Other courts have found that the employer's
application for insurance and status as policyholder constitute
endorsement which disqualify an insurance policy from ERISA's
safe harbor.  See Butero v. Royal Maccabees Life Ins. Co., 174
F.3d 1207, 1213 (11th Cir. 1999); Hall v. Standard Ins. Co., 381
F.Supp.2d 526, 529 (W.D. Va. 2005); Stoudemire v. Provident Life

13

Case No. 8:09-CV-1725-T-17MAP

and Acc. Ins. Co., 24 F. Supp.2d 1252, 1257-58 (M.D. Ala. 1998)(employer's status as "designated Group Policyholder" considered evidence of endorsement); Davis v. Guarantee Life Ins. Co., 2001 WL 515252, *2-3 (E.D. La. May 11, 2001)(completion of application considered evidence of endorsement).

The Court notes that Delta's Master Application for insurance restricts eligibility to permanent employees and temporary employees who have completed thirty days of service. Restriction of eligibility has been held to indicate the presence of an ERISA plan outside of the safe harbor.  See Brundage-Peterson v. Compcare Health Services Ins. Corp., 877 F.2d 509, 510-11 (7th Cir. 1989)(plan created by contract and eligible employees designated).

Tasks such as collecting premiums, providing claim forms to employees, completing the "employer" portion of claim forms, submitting claim forms to the insurance company, and keeping track of employee eligibility have been deemed administrative tasks which do not establish that an employer endorsed the policy.   These tasks may be considered ancillary to a permitted function.   Johnson v. Watts Regulator Co., 63 F.3d 1129 (1st Cir. 1995).  The Court notes the following provision of the insurance policy:

> **RECORDS MAINTAINED:** Delta shall maintain the
> enrollment records with respect to each
> insured Employee.  Delta shall furnish
> periodically such information relating to new
> persons, adjustments because of changes in,
> and terminations of, insurance as may be
> required by the Company to administer this
> insurance.  Then Company shall provide the

14

Case No. 8:09-CV-1725-T-17MAP

        necessary employees to administer the program
        on the premises of Delta.

(Dkt. 24-2, p. 18).   The subject insurance policy provides that
the insurance company will administer the program, with the
Company providing the necessary employees to administer the
program on Delta's premises.   While the fact that the insurance
carrier administers the program would weigh against a finding of
endorsement, permitting the insurance company's employees to
administer the program within Delta's workplace on an ongoing
basis goes beyond publicizing the program, and collecting and
remitting premiums.

     Defendant Hartford argues that the Booklet-Certificate which
Delta provided to its employees states on the cover page in large
print, as part of the plan title, that the plan was designed for
employees of Delta (Dkt. 21-3, p. 1).   Other courts have held
that this constitutes endorsement.   Sanfilippo v. Provident Life
and Acc. Ins. Co., 178 F.Supp.2d 450, 456 (S.D.N.Y. 2002); Weber
v. Hartford Life and Acc. Ins. Co., 2008 WL 3932014, *10 (D.
Ariz. August 25, 2008)(policy customized to meet needs of
[employer] and [its] employees).

     In Anderson v. UnumProvident Corp., supra, the district
court concluded that the employer endorsed the plan because,
inter alia, the employer's logo appeared on the cover page of the
summary plan description ("SPD"), with no mention of the
insurance carrier.   In this case, the title on the cover page of
the SPD which specifies that the program is designed for Delta
employees does appear prominently in large print.   The insurance
carrier's logo also appears on the cover page as well, albeit on
a smaller scale compared with the title. (Dkt. 24-3, p. 5).

Case No. 8:09-CV-1725-T-17MAP

While the facts in this case do not mirror those in <u>Anderson</u> exactly, after consideration, the Court finds that an objectively reasonable employee viewing the cover page would conclude that the insurance program was part of the company's benefit package, based on an understanding that the program was tailored to Delta employees.

The Court further notes that the subject policy provides that the policy could be amended only by a writing signed by Delta and an Executive Officer of the Company. The Court also notes that Delta had the power to terminate the subject policy as provided within the policy. These provisions show that Delta exercised a degree of control over the subject insurance policy.

After consideration of the above factors, the Court concludes that an objectively reasonable employee with knowledge of the above factors would conclude that Delta endorsed the subject policy. Plaintiff Rengifo's subjective personal belief that Delta did not endorse the insurance policy is not dispositive. Since Delta did more than collect and remit premiums and permit Defendant Hartford to publicize the insurance program, the Court finds that the insurance program does not fall within ERISA's safe harbor.

2.  Establish or Maintain Employee Welfare Benefit Plan

The Court first considers whether a plan exists, and then whether Delta established or maintained a plan.

Case No. 8:09-CV-1725-T-17MAP

In determining whether an employee welfare benefit plan exists, the Court must determine whether, from the surrounding circumstances, a reasonable person could ascertain the intended benefits, beneficiaries, source of financing, and procedures for receiving benefits.  Donovan v. Dillingham, 688 F.2d 1367, 1371 (11th Cir. 1982).  Defendant Hartford must show five things to establish that an ERISA plan governs its relationship with Plaintiff: "1) a plan, fund or program; 2) [has been] established or maintained; 3) by an employer...; 4) for the purpose of providing benefits in the event of...death; 5) to participants or their beneficiaries." Donovan v. Dillingham, supra, at 1371.

The Court notes that the subject insurance policy does not refer to ERISA.  However, the lack of reference to ERISA does not necessarily mean that the insurance policy is not an ERISA plan. The undisputed record evidence establishes that a "plan" exists. Delta Air Lines, Inc., the employer, applied for and obtained the subject insurance policy.  The insurance policy identifies the intended benefits, in this case, death benefits, and claim procedures.  The policy provides a means to designate beneficiaries, and Plaintiff Rengifo, a plan participant, asserts that Plaintiff is the beneficiary of the insurance policy at issue.

A plan is "established" when there has been some degree of implementation by the employer beyond the a mere intent to confer a benefit.  Butero v. Royal Maccabees Life Ins. Co., 174 F.3d 1207, 1215 (11th Cir. 1999).  No single act by itself necessarily constitutes the establishment of a plan, fund or program.  The purchase of insurance does not conclusively

17

Case No. 8:09-CV-1725-T-17MAP

establish a plan, fund or program, but the purchase is
circumstantial evidence of the establishment of a plan, fund or
program.   Donovan v. Dillingham, 688 F.2d 1367, 1374 (11th Cir.
1982).

In Butero v. Royal Maccabees Life Ins. Co., 174 F.3d 1207,
1215 (11th Cir. 1999), the Eleventh Circuit Court of Appeals
suggests seven factors that may be relevant in determining
whether an employer has established or maintained a plan: 1) the
employer's representations in internally distributed documents;
2) the employer's oral representations; 3) the employer's
establishment of a fund to pay benefits; 4) actual payment of
benefits; 5) the employer's deliberate failure to correct known
perceptions of a plan's existence; 6) the reasonable
understanding of the employees; and 7) the employer's intent.

A) Representations in Internally Distributed Documents

There is no representation as to ERISA in the annual
"Booklet Certificates" distributed to Delta employees, but, from
the form of the documents, including the representation that the
policy was designed for Delta employees, a reasonable employee
could infer that Delta established or maintained a plan.

B) Oral Representations

There is no evidence that Delta made oral representations
that Delta established or maintained an employee welfare benefit
plan for its employees.

18

Case No. 8:09-CV-1725-T-17MAP

C) Establishment of Fund

The undisputed evidence establishes that the employer, Delta, applied for the subject insurance policy and is the policyholder.   Policy SR 83015541 provides a fund to pay for benefits in the event of covered accidents for enrolled employees.

D) Actual Payment of Benefits

The only evidence of actual payment of benefits within the record is the statement in the 2006 Certificate:    "Good plan experience credits over the years have produced the odd coverage amounts."  A reasonable employee could infer that benefits have been paid in the past.

E) Deliberate Failure to Correct Known Perceptions of Plan's Existence

The Court is not aware of any evidence within the record as to this factor.

F) Reasonable Understanding of a Plan's Existence

The Court notes that the annual Booklet Certificate states that the insurance policy provides comprehensive accident coverage.  The Court further relies on the factors considered in the safe harbor analysis above as relevant to the reasonable understanding of Delta employees that Delta established and maintained an employee welfare benefit plan.

19

Case No. 8:09-CV-1725-T-17MAP

G) Employer's Intent

Plaintiff Rengifo has provided documents from Delta which assert that prior to January 1, 2008, Delta did not provide group accident coverage under an ERISA benefit plan. (Dkts. 21-1, 21-2). The documents indicate that Delta believed that the group policy was not an ERISA plan or part of an ERISA plan. However, an employer's subjective intent is not dispositive of the issue of whether an ERISA plan has been established or maintained. This determination calls for a legal conclusion based on all relevant evidence surrounding the creation or implementation of the plan, considered from the point of view of an objectively reasonable employee.

Because the determination of whether an ERISA plan exists and has been established or maintained calls for a legal conclusion by the Court based on the above relevant factors, the Court has not considered the affidavit of Plaintiff's expert, Mark Johnson, Ph.D., J.D., in its determination of the issue.

After consideration of the undisputed record evidence, the Court finds that an ERISA plan exists which was established and maintained by Delta Air Lines, Inc. Therefore, ERISA controls the resolution of this case. Plaintiff Rengifo may pursue her claim for life insurance proceeds under 29 U.S.C. Sec. 1132(a)(3). The Court will dismiss Count I with leave to file an amended complaint, and will dismiss Count II, for breach of fiduciary duty, with prejudice.

20

Case No. 8:09-CV-1725-T-17MAP

3) Jury Trial

There is no right to a jury trial in an action to recover ERISA benefits.  <u>Shaw v. Connecticut General Insurance Co.</u>, 353 F.3d 1276, 1286 (11th Cir. 2003).

4) Punitive Damages

The remedies available under ERISA do not include extra-contractual or punitive damages.  <u>Amos v. Blue Cross-Blue Shield of Alabama</u>, 868 F.2d 430, 431 (11th Cir. 1989).  Any state statute providing punitive damages is preempted in an ERISA case.  <u>Barber v. Unum Life Ins. Co. of Am.</u>, 383 F.3d 134, 140-41 (3d Cir. 2004).  Accordingly, it is

**ORDERED** that Defendant's Motion for Partial Summary Judgment is **granted.**  Count I is **dismissed,** with leave to file an amended complaint without fourteen days which asserts Plaintiff's claim under 29 U.S.C. Sec. 1132(a)(3), and Count II is **dismissed with prejudice.**  Plaintiff's requests for a jury trial and for the award of punitive damages are **stricken.**

**DONE AND ORDERED** in Chambers, in Tampa, Florida on this 13th day of December, 2010.

ELIZABETH A. KOVACHEVICH
United States District Judge

Copies to:
All parties and counsel of record

21